| | |
|---|---|
| **KIMBERLY LIVINGSTON, and KOBI LYLES,** Individually and on behalf of all others similarly situated, | |
| **Plaintiffs,** | Case No. 2:20-cv-12302-PDB-APP |
| v. | |
| **QUALFON DATA SERVICES GROUP, LLC,** | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)** |
| **Defendant.** | |

Jennifer McManus (P65976)
FAGAN MCMANUS, P.C.
25892 Woodward Avenue
Royal Oak, Michigan
(248) 542-6300
jmcmanus@faganlaw.com

*Attorneys for Plaintiffs and Putative Collective Members*

Clif Alexander
Austin W. Anderson
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

## PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

Plaintiffs, Kimberly Livingston, Kobi Lyles, and Adriana McBride, by and through their undersigned counsel, individually and on behalf of all others similarly situated ("Plaintiffs"), file this Unopposed Motion for Settlement Approval and Dismissal with Prejudice ("Motion") seeking the Court's approval of the Settlement, specifically, the Settlement Agreement, attached hereto as Exhibit A, along with all

1

exhibits thereto ("Settlement Agreement"), and certification of a collective action, for settlement purposes only. Approval of the proposed Settlement Agreement, Dismissal with Prejudice, and certification of a collective action is further supported by the attached Memorandum of Law. Plaintiffs further state:

1.  A *bona fide* dispute exists between Plaintiffs and Defendants Qualfon Data Services Group, LLC, and DMI GC Holdings, LLC d/b/a Dialog Direct ("Defendants").

2.  The terms and conditions of the proposed settlement between Plaintiffs and Defendants, as defined and described in the Settlement Agreement, are fair, reasonable, and adequate.

3.  The form of the Notice of Settlement and the method of disseminating this information to the Collective, as described in the Settlement Agreement are fair, reasonable and adequate.

4.  That the method of allocating a settlement award to each member of the Settlement Collective is fair, reasonable, and adequate.

5.  That the attorneys' fees and costs are fair, reasonable, and adequate.

6.  Plaintiffs, Opt-In Plaintiffs, and the Putative Collective Members are similarly situated and certification of a collective action, for settlement purposes only, is warranted.

7.  Defendants do not oppose the relief requested herein.

Dated: September 20, 2021                    Respectfully submitted,

/s/ Jennifer McManus                         /s/ Clif Alexander
Jennifer McManus (P65976)                    Clif Alexander
FAGAN MCMANUS, P.C.                           Austin W. Anderson
Attorneys for Plaintiffs                     ANDERSON ALEXANDER, PLLC
25892 Woodward Avenue                        Attorneys for Plaintiffs
Royal Oak, Michigan                          819 N. Upper Broadway
(248) 542-6300                               Corpus Christi, Texas 78401
jmcmanus@faganlaw.com                        (361) 452-1279
                                             clif@a2xlaw.com
                                             austin@a2xlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2021 a copy of the foregoing document

was filed electronically in the United States District Court for the Eastern District of

Michigan. Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

/s/ Clif Alexander
Clif Alexander

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KIMBERLY LIVINGSTON, and
KOBI LYLES,**
**Individually and on behalf of all
others similarly situated,**

          **Plaintiffs,**

    v.

**QUALFON DATA SERVICES
GROUP, LLC,**

          **Defendant.**

**Case No. 2:20-cv-12302-PDB-APP**


**COLLECTIVE ACTION
PURSUANT TO 29 U.S.C. § 216(B)**

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

### I.
### INTRODUCTION

This proposed settlement resolves two wage and hour lawsuits against

legally distinct, but related, entities that have been consolidated under one cause for

settlement purposes only.[1] Plaintiffs[2] alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201–19, the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, *et seq.*, Texas common law, and the Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws Ann. § 408.411, *et seq.*. Although Defendants deny any and all liability, the Parties have agreed to a settlement, the terms of which are defined and described in the Settlement Agreement and Exhibits ("Settlement Agreement").

The Parties have agreed, subject to Court approval, to resolve these wage and hour claims on a collective-wide basis. The Settlement Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, was reached after contested

---

[1] The wage and hour lawsuit filed by Kimberly Livingston and Kobi Lyles, individually and on behalf of all other hourly Call-Center employees who were employed by Qualfon Data Services Group, LLC ("Qualfon") anywhere in the United States, at any time from August 26, 2017 through the final disposition of this matter under cause number 2:20-cv-12302 ("*Qualfon* Litigation). *See* ECF No. 1. The wage and hour lawsuit filed by Adriana McBride, individually and on behalf of all other hourly Call-Center employees who were employed by DMI GC Holding, LLC d/b/a Dialog Direct ("Dialog Direct") anywhere in the United States, at any time from August 26, 2017 through the final disposition of this matter under cause number 5:20-cv-12305 ("*Dialog Direct* Litigation").

[2] Unless otherwise specified, capitalized terms used herein have the same meaning as the capitalized and defined terms in the Settlement Agreement submitted for approval with this Motion.

litigation, and was the result of arms'-length settlement negotiations conducted by John Phillips, a well-respected wage and hour mediator.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) finding that the Settlement Agreement attached as Exhibit A is a fair and reasonable resolution of a *bona fide* dispute; (2) conditionally certifying a collective action, as defined herein, for settlement purposes only; (3) approving the Notice Materials, including the Settlement Notice and Claim Form, attached as Exhibits B and C to the Settlement Agreement; (4) approving the method of dissemination for the Notice Materials; (5) approving the service awards for Named Plaintiffs, (6) approving the requested attorneys' fees and expenses; and (7) dismissing the underlying claims with prejudice.

## II.
## PERTINENT FACTS

Qualfon operates customer engagement and contact centers that provide direct marketing, customer service and sales, tech support, and inside sales to their business clients' customers.[3] Dialog Direct operates as an affiliated entity with Qualfon and is under common control with Qualfon. *See* ECF No. 27, p. 2. Since the filing of these consolidated lawsuits, seventy-two (72) individuals have opted-in to become party plaintiffs in the *Qualfon* litigation and thirty-one (31) individuals have opted-

---

[3] https://www.qualfon.com.

in to become party plaintiffs in the *Dialog Direc*t litigation in addition to the Plaintiffs (collectively, the "Opt-In Plaintiffs").

Plaintiffs and Defendants began to meaningfully discuss potential resolution of the claims during their Rule 26(f) conferences. They engaged in an informal exchange of information wherein Defendants produced extensive timekeeping and payroll data related to the Plaintiffs, Opt-In Plaintiffs, and Putative Collective Members to allow the parties to evaluate Plaintiffs' claims and Defendants' potential exposure in order to facilitate the Parties' settlement discussions.

In addition to reviewing the timekeeping and payroll information provided by Defendants, Collective Counsel also reviewed documents provided by Plaintiffs and the Opt-In Plaintiffs and conducted extensive interviews with Plaintiffs and numerous Opt-In Plaintiffs prior to mediation. After a full review of the information obtained and open and full debate over the contested legal and factual issues, and after engaging in rigorous settlement negotiations with the aid of the mediator, John Phillips, the Parties, with the assistance of Counsel, agree that the negotiated terms of the Settlement represent a fair, reasonable, and just compromise of disputed issues.

With compromise from both sides, the Parties reached the Settlement Agreement now before the Court. The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length. The Parties share an

interest in fully and finally resolving the issues raised in this action. Because the Parties recognize the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agree to be bound by the Settlement Agreement which they now ask this Court to approve. The Parties have conditioned the overall Settlement upon the Court's approval of the agreed upon settlement terms.

### III.
### SUMMARY OF THE SETTLEMENT TERMS

#### A.     The Settlement Fund

The Settlement Agreement establishes a Total Settlement Amount of $1,100,000.00 to settle claims against Defendants.   Exhibit A, ¶ 7(a). The Total Settlement Amount covers eligible Settlement Collective Members' awards, as well as attorneys' fees, costs, modest service awards for the three Plaintiffs of $2,500.00, for a total of $7,500.00, and third-party administrative fees and costs associated with allocation and disbursement of the settlement proceeds. *See id.*

#### B.     Putative Collective Members

The individuals eligible to participate in the proposed settlement include the Plaintiffs, Opt-In Plaintiffs and the Putative Collective Members, who are defined as all current or former hourly employees who worked for Defendants in a position involved in customer service/contact, anywhere in the United States, at any time

from December 1, 2017 through the date of approval of the Settlement by the Court who were identified in the timekeeping and payroll data produced by Defendants for purposes of facilitating the Parties' settlement discussions. There are currently 103 Opt-In Plaintiffs in this consolidated matter in addition to the three Named Plaintiffs.

## C.     **Allocation Formula**

Putative Collective Members who return claim forms will be paid their *pro rata* share of the Net Settlement Fund based on the number of workweeks that they worked for Defendants during the Collective Period.[4]   Specifically, the Net Settlement Fund will be divided into equal shares based on the total number of workweeks worked by the Putative Collective Members during the Collective Period, with each workweek equal to one-share of the Net Settlement Amount—that is, if the total workweeks worked by the Putative Collective Members during the Collective Period equal 100 workweeks, then each workweek would represent 1/100 [1-Share] of the Net Settlement Amount.

If a Putative Collective Member timely returns a claim form after receiving Notice, they will receive a payment at the rate calculated for one share from the Net Settlement Fund equal to the total number of workweeks they worked during the

---

[4] The Net Settlement Fund is calculated by deducting Collective Counsel's fees and costs, Plaintiffs' service awards, and the third-party administrator's fees and expenses from the Gross Settlement Fund. *See* Exhibit A, ¶ 7(a).

Collective Period. Defendants' records shall determine the overall workweeks worked by the Putative Collective Members. *See* Exhibit A, ¶ 7(d).

**D.**     **Settlement Payments**

The Settlement Administrator shall mail each Putative Collective Member that submits a claim form their respective individual settlement payments within forty-five (45) calendar days after the close of the sixty (60) day Notice Period. Those individuals will then have ninety (90) calendar days to cash their respective settlement checks.

**IV.**
**ARGUMENT**

**A.**     **Standard of Review**

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal

citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

Courts in this Circuit have assessed whether a settlement agreement in a collective action is fair and reasonable using the same factors applied in assessing whether a settlement agreement in a Rule 23 class action is fair and reasonable. *Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 6205685, at *5 (W.D. Ky. Oct. 22, 2020). Those factors include the following:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of Collective Counsel and class Representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.*; *see also Arrington*, 2012 U.S. Dist. LEXIS 157362, *2–3; *see also Crawford v. Lexington-Fayette Urban Cnty. Gov't*, CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). The above list is non-exhaustive, and courts do not necessarily apply all of the factors; rather, the factors are guideposts used to determine the fairness of a proposed settlement. See Arrington, 2012 U.S. Dist. LEXIS 157362, *2–3 "A court applying these factors must do so in the context of the actual settlement." Arrington, 2012 U.S. Dist. LEXIS 157362, *3.

### 1. **The Absence of Fraud or Collusion in the Settlement**

In the instant case, there is a *bona fide* dispute over whether Defendants violated the FLSA and relevant state law. Plaintiffs have alleged Defendants do not pay for all time that Plaintiffs and the Putative Collective Members worked on their behalf.[5] Defendants deny Plaintiffs' allegations and maintain that they have properly paid Plaintiffs and the Putative Collective Members for all hours worked, maintain policies that comply with state and federal law, train all employees on those policies, and adhere to their policies and the laws governing their wage and hour practices.

There was no fraud or collusion in reaching this Settlement. The Parties engaged in extensive informal discovery, which included production of voluminous timekeeping and compensation records, and settlement was reached only through the assistance of a skilled and well-respected wage and hour mediator, John Phillips. The Settlement will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. In agreeing upon the proposed Settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

---

[5] Specifically, Plaintiffs have alleged Defendants fail to pay them for their initial start-up time, time spent logging in (and out) for their lunch breaks, time spent completing calls post-shift, time spent trouble-shooting technical issues, and for time spent on short breaks lasting less than twenty (20) minutes.

## 2. **Complexity, Expense, and Likely Duration of the Litigation**

In evaluating a proposed collective settlement, the Court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the collective in the proposed settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement in a representative action. *See e.g.*, *In re Telectronics Pacing Sys., Inc.* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id*. at 1013.

Here, if not for the Settlement, the case would have continued to be fiercely contested by the Parties. Defendants, which are represented by capable and well-versed wage and hour counsel, have demonstrated the commitment to defend the case through trial and beyond trial, if necessary.

Should this case continue before this Court, extensive discovery remains, both as to the appropriateness of class and collective certification and as to the merits of the underlying claims, including many depositions of Putative Collective Members in varying positions, written discovery, and likely engagement of costly expert witnesses. Likewise, Plaintiffs would move for both conditional certification of a

collective action pursuant to 29 U.S.C. § 216(b) and certification of a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). Additionally, both Parties would likely brief and file dispositive motions.

The expense of continued litigation would be substantial as the Parties would have to complete a lengthy and extensive trial. Any trial would likely last more than one month, and involve numerous attorneys and witnesses; the introduction of voluminous documentary and deposition evidence; vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial, there most certainly would be appeals which would deny the Collective any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals.").

The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.

### 3.    __Amount of Discovery Engaged in by the Parties__

The Parties have exchanged significant amounts of data regarding Plaintiffs and the Putative Collective Members' claims. Further, Collective Counsel has been in regular communication with Plaintiffs regarding their claims for alleged unpaid time and have reviewed client documents provided from both Plaintiffs and Defendants. This time and effort spent allowed Collective Counsel to create a compilation of damage assessments for Plaintiffs and the Putative Collective Members.

The Parties engaged in numerous meetings over the course of several months focused on attempting to resolve this case, and ultimately participated in formal mediation. Collective Counsel was well informed of the available damages and clearly understood the legal and factual issues involved and were able to meaningfully engage in settlement negotiations with Defendants.

### 4.    __The Likelihood of Success on the Merits__

Plaintiffs' likelihood of success on the merits and the amount of damages they and the Putative Collective Members would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendants deny, that they (and the Putative Collective Members) are owed compensation due to Defendants' alleged violations of the FLSA. The range of possible recovery—if any—by Plaintiffs and the Putative Collective Members is

open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both sides, the specific amount of their recovery is uncertain, and may be as Defendants contend— *de minimis*. Thus, this proposed Settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### 5. The Opinions of Collective Counsel and the Collective Representatives

Collective Counsel and Named Plaintiffs are of the opinion that this proposed Settlement is a fair and reasonable compromise. *See* Declaration of Clif Alexander, attached hereto as Exhibit B, ¶ 14. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs . . . ." *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983). Collective Counsel here have extensive experience in handling large nationwide FLSA collective actions (like this one) and they have thoroughly investigated and analyzed the claims alleged in these actions. *See id.* Moreover, Collective Counsel have represented over 100,000 call-center employees in approximately forty (40) cases against call centers across the United States. *See id.* Based on their extensive experience with the applicable law, and the call-center industry specifically, they have made informed judgments regarding the Settlement and believe that they are fair, reasonable and adequate. *See id.*

### 6. Whether the Settlement Is the Product of Arm's Length Negotiations as Opposed to Collusive Bargaining

These lawsuits were initially filed August 27, 2020 as hybrid collective/class actions. After filing, the Parties conferred in good faith and agreed to engage in an informal exchange of information in an effort to obtain an early resolution of this matter. Based on that agreement, the Parties sought and obtained a stay of the litigation in both cases to allow them to mediate this matter and subsequently scheduled a mediation with John Phillips, and mediation took place on June 29, 2021.

No settlement occurred until Collective Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained. The risks of non-recovery, addressed above, were considered by Collective Counsel in negotiating the proposed Settlement. Oftentimes, the best opportunity to resolve a case is when uncertainty over those still undecided issues remains for both sides.

Without evidence to the contrary, the Court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Telectronics,* 137 F. Supp. 2d at 1018 (citing *Newberg on Class Actions* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")). The Settlement in this case came after

contested litigation and was a product of formal mediation.  Far from collusion, the current settlement could only have been forged through arms' length negotiations.

### 7. <u>Whether the Settlement Is Consistent with the Public Interest.</u>

The final factor that the Court considers in evaluating a settlement is whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). This is particularly true when the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985). Here, it is certainly in the public interest to approve this Settlement. The Settlement resolves the claims of the Collective in exchange for a fair return, eliminates the risk to the Collective of complete non-recovery, provides certainty to Defendants, and eases the burdens on the already heavily-taxed courts.  In sum, given the complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms of the Settlement Agreement, the proposed Settlement is fair, adequate and reasonable.

**B.    The Settlement Is Fair and Reasonable and Should Be Approved.**

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1355; *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1–2 (E.D. Tenn. Dec. 26, 2012).[6]

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike a class action pursuant to Federal Rule of Civil Procedure 23. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73–74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed

---

[6] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042, at *3 (D. Conn. July 31, 2014). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008).

because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013). Accordingly, the exacting standards for approval of a Class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b). *Crawford*, 2008 WL 4724499, at *3.

The FLSA Settlement in this case meets the standard for approval. The Settlement was the result of contested litigation with significant data exchanged between the Parties and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement after mediation before recognized wage and hour mediator, John Phillips. At all times during the settlement negotiation process, negotiations were conducted at arms'-length. The Total Settlement Amount is substantial in light of the nature of the off-the-clock claims alleged by Plaintiffs and the Putative Collective Members. The proposed allocation of the Settlement is also reasonable. It reflects the proportion of damages owed to

each eligible Settlement Collective Member based on their total workweeks of employment with Defendants during the relevant window of recovery.

According to the Settlement Agreement, awards in this case will provide a significant recovery for the Settlement Collective Members' claims. This Settlement constitutes a substantial recovery for all Collective Members and is calculated to ensure appropriate proportionality dependent on the total weeks worked by each Settlement Collective Member.

**C.**     **Certification of A Settlement Collective is Warranted**

Plaintiffs, seek certification of a collective action, as defined below:

> All current or former hourly call-center employees who worked for Defendants in a position involved in customer service/contact, anywhere in the United States, at any time from December 1, 2017 through the date of approval of the Settlement by the Court, who were identified in the timekeeping and payroll data produced by Defendants for purposes of facilitating the Parties' settlement discussions and the Named Plaintiffs and Opt-In Plaintiffs.

*See* Exhibit 1, ¶ 1(u). These individuals are similarly situated in terms of their job descriptions, job titles, and job duties. Moreover, their claims share the same alleged factual basis. Importantly, Defendants do not contest the certification of a collective action, for purposes of settlement only.

**D.**     **Attorneys' Fees and Costs Should be Approved**

Defendants have agreed to pay the Collective Counsel's attorneys' fees and costs as set forth in the Settlement Agreement. Specifically, Plaintiffs ask this Court

to approve an award of attorneys' fees of 40% of the Total Settlement Fund, exclusive of litigation costs and expenses. *See* Exhibit A, ¶ 7(b); Exhibit B, ¶ 16. Defendants do not object to the Court approving such an award of attorneys' fees and expenses.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) (*citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case")). The standard for reviewing a request for attorney's

fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. *See Fegley*, 19 F.3d at 1134–43 (6th Cir. 1994) (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").[7]

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy").

In common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the Collective[.]"*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984);

---

[7] See *also Bozak*, 2014 WL 3778211, at *6 ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and citation omitted). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134; *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others").

*Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each Collective member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531–32 (finding application of "percentage-of-the-[common-]fund approach appropriate).

As here, a percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516–17. This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (citation and internal quotes omitted). The lodestar approach burdens a court with the task of reviewing extensive time records reflecting many hours of attorney time. *Rawlings*, 9 F.3d at 516–17. In contrast, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery." *Id.* at 516. Crucially, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement class members who do not file claims revert to defendants. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980) (stating that this approach "rectifies inequity by requiring every member of the Collective to share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that Collective counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, *Newberg on Collective Actions* § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of a percentage of the claimed fund and awarding attorneys' fees of a percentage of funds made available).

1. **An Award of 40% of the Fund is Reasonable and Should Be Granted**

The central requirement for an award of fees is that it be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); *Rawlings*, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (using reasonableness standard in FLSA context). Plaintiffs request an award of 40% of the Total Settlement Amount as attorneys' fees. Generally, contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases and courts regularly findd contingent fees of 40% to be reasonable. *Duprey v. Scotts Co. LLC.*, 30 F. Supp. 3d 404 (D. Md. 2014); *Garcia v. Decalo Medical Group, LLC.*, No. 14-00301 2015 WL 9311984 (D. Md. Dec. 23, 2014); *Torres v. Gristede's Operating Corp.* 519 F. App'x 1 (2nd Cir. 2013).

The work that Collective Counsel has performed in litigating and settling this case demonstrates their commitment to the Putative Collective Members and to representing the Putative Collective Members' interests and establishes the reasonableness of their fees. Collective Counsel has committed substantial resources to prosecuting this case. The work that Collective Counsel has performed— including investigating claims, reviewing documents, drafting the complaint, conferring with clients, legal research, discovery, preparing for and attending

mediation, and negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the Collective. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Collective Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the Collective and to representing the Collective's interests").

Here, Collective Counsel has secured a substantial settlement on behalf of Plaintiffs and the Putative Collective Members. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Collective Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. *See Dillworth*, 2010 WL 776933, at *8 (citing as justification for recovery of percentage recovery from common fund "[t]he contingent nature of the fee

agreement," which "meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved").[8]

The fee requested by Collective Counsel also is reasonable because they will continue to perform a significant amount of work on behalf of the Putative Collective Members in implementing the Settlement and assisting with the administration of the settlement fund. Nonetheless, Collective Counsel will not make a supplemental fee application. *See Bozak*, 2014 WL 3778211, at *8. Collective Counsel anticipate that they will be required to spend a significant amount of additional time answering questions from eligible Putative Collective Members and ensuring that all reasonable steps are taken to ensure that to the extent any Putative Collective Members have moved since litigation commenced, that such Putative Collective Members are notified of their opportunity to participate in the Settlement and of their potential share of the Net Settlement Fund. Collective Counsel take very seriously their continuing obligation to represent the Putative Collective Members during the settlement approval process and the disbursement phase, which they will honor.

---

[8] *See also In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (finding reasonable award of one-third of settlement fund; granting $52,866,667, in addition to previous award of $48,333,333); *Dallas*, 2013 WL 2197624, at *12 (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex Collective actions").

Collective Counsel also have incurred out-of-pocket costs prosecuting this case, including costs for electronic research, court fees, postage and courier fees, and Plaintiffs' portion of the mediator's fees. Exhibit B, ¶ 15; *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). In total, Collective Counsel has expended $5,247.67 in litigation costs and expenses in this matter to date. *See* Exhibit B, ¶ 15. Collective Counsel's request for attorneys' fees and costs of 40% of the Total Settlement Amount is reasonable and should be approved.

## V.
## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order:  (1) finding that the Settlement Agreement attached as Exhibit A is a fair and reasonable resolution of a *bona fide* dispute and approving the settlement set forth in the Settlement Agreement; (2) approving the Notice Materials, including the Settlement Notice and Claim Form, attached as Exhibits B and C to the Settlement Agreement; (3) approving the method of dissemination for the Notice Materials; (4) approving the service awards for the Named Plaintiffs; (5) approving the requested attorneys' fees and expenses; and (6) dismissing the underlying claims with prejudice.

Dated: September 20, 2021                    Respectfully submitted,

/s/ Jennifer McManus                        /s/ Clif Alexander
Jennifer McManus (P65976)                   Clif Alexander
FAGAN MCMANUS, P.C.                          Austin W. Anderson
Attorneys for Plaintiffs                    ANDERSON ALEXANDER, PLLC
25892 Woodward Avenue                       Attorneys for Plaintiffs
Royal Oak, Michigan                         819 N. Upper Broadway
(248) 542-6300                              Corpus Christi, Texas 78401
jmcmanus@faganlaw.com                       (361) 452-1279
                                            clif@a2xlaw.com
                                            austin@a2xlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021, a copy of the foregoing document was filed electronically in the United States District Court for the Eastern District of Michigan. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Clif Alexander
Clif Alexander